UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>LML ENTERPRISES, INC.,<br><br>　　　　Defendant. | Case No.  13-cv-03117 JCS<br><br>**REPORT & RECOMMENDATION RE MOTION FOR DEFAULT JUDGMENT**<br><br>Docket No. 17 |

## I. INTRODUCTION

In this ERISA enforcement action, Plaintiffs bring a Motion for Default Judgment (the "Motion") seeking entry of default judgment and an order awarding unpaid employee benefit contributions, liquidated damages, interest, and attorneys' fees and costs. Plaintiffs also request an order compelling Defendant to submit to an audit of its records. The Motion came on for hearing on Friday, March 14, 2014, at 9:30 a.m. Plaintiffs submitted supplemental materials in support of the Motion on April 14, 2014. Because Defendant did not appear or consent to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c), this case is ordered reassigned to a district judge with the following Report and Recommendation. For the reasons stated below, it is recommended that the Motion be GRANTED.

## II. BACKGROUND

### A. Facts

In the Complaint, the following trust funds (the "Trust Funds") are named as Plaintiffs: (1) Laborers Health and Welfare Trust Fund for Northern California; (2) Laborers Vacation-Holiday Trust Fund for Northern California; (3) Laborers Pension Trust Fund for Northern California; and (4) Laborers Training and Retraining Trust Fund for Northern California. Complaint at 2. The

1  Trust Funds are employee benefit plans within the meaning of sections 3, 4, and 502 of the
2  Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002, 1003 and 1132. *Id*.
3      The Complaint names LML Enterprises, Inc. ("LML") as Defendant. Plaintiffs allege that
4  Defendant is an employer within the meaning of section 3(5) and section 515 of ERISA, 29 U.S.C.
5  §§ 1002(5), 1145.
6      On September 20, 2011, LML signed a Memorandum Agreement with the Northern
7  California District Council of Laborers agreeing to be bound by the Northern California Laborers
8  Master Agreement (hereinafter "Master Agreement") and the Trust Agreements which govern
9  each of the Trust Funds. Complaint at 2-3; Declaration of Michelle Lauziere in Support of Motion
10 for Default Judgment ("Lauziere Decl") ¶7 & Ex. E. LML signed a subsequent Memorandum
11 Agreement on October 24, 2012. Lauziere Decl. ¶ 7 & Ex. F. The Master Agreement establishes
12 the rates at which employers are required to make contributions to the Trust Funds. Lauziere
13 Decl. ¶¶ 7-8 & Exs. A-C. Under the Trust Agreements, employers are required to report the
14 contributions due and make payments no later than the 25th day of the following month; if
15 payments are not made by that date they become delinquent. Lauziere Decl. ¶ 9 & Ex. A (Trust
16 Agreements), Sections 9-10. The Master Agreement also provides for liquidated damages and
17 interest on delinquent contributions, stating as follows:

> All delinquent contributions shall bear simple interest at the rate of one and one-half percent (1.5%) per month until receipt of payment. Subject to account verification, liquidated damages shall be assessed on delinquent contributions at a flat rate of one hundred and fifty dollars ($150.00) per month to reflect the internal administrative costs incurred by the trust administrators in monitoring and tracking such late contributions.

22 Lauziere Decl., Ex. D (Master Agreement), Section 28A.[1]
23     The Master Agreement further provides for an audit of the books and records of signatory
24 employers so that the Laborers Trust Funds may determine if the employer is making full and

---

[1] At oral argument, Plaintiffs stipulated that the $150 in liquidated damages referenced in Section 28A does not accrue every month after the contribution becomes delinquent and remains unpaid, as the language of that provision might suggest, but rather, is a one-time fee that is imposed for each month in which contributions are not paid on time. *See also* Supplemental Declaration of Michelle Lauziere in Support of Plaintiffs' Motion for Default Judgment ("Lauziere Supp. Decl.") ¶ 5.

prompt payment of required contributions. Lauziere Decl. ¶ 11 & Ex. D (Master Agreement), Section 7 ("Each Individual Employer, upon request of any Trust Fund specified in this Agreement, shall permit a Trust Fund Auditor to review any and all records relevant to the enforcement of the provisions of this Agreement pertaining to the Trust Funds.")

In the Complaint, Plaintiffs alleged that LML failed to make contributions that were required under the Master Agreement and Trust Agreements "in the sum estimated to be at least $101,389.09 for the period July 2012 through March 2013." Complaint at 4. In addition, Plaintiffs alleged that "there are liquidated damages and interest for contributions which were paid, but paid late, in the amount estimated to be at least $1,071.39 for the months April 2012 through June 2012." *Id*. Finally, Plaintiffs alleged that they were owed "liquidated damages and interest for contributions which were reported, but not paid, in the amount estimated to be at least $9,698.28 for the period July 2012 through March 2013." *Id*. Plaintiffs asserted the following claims: 1) breach of contract; 2) actual damages for breach of contract; 3) damages and equitable relief for breach of fiduciary duty, which Plaintiffs alleged constituted a violation of ERISA, 29 U.S.C. § 1145; 4) audit. In their prayer, Plaintiffs requested an order requiring LML to pay: 1) unpaid contributions for the period July 2012 - March 2013, in the amount of $101,389.09; 2) $1,079.39 for liquidated damages and interest on contributions that were paid but paid late, for the months of April 2012 through June 2012, and $9,698.28 for liquidated damages and interest on contributions that had not been paid for the months of July 2012 through March 2013; and 3) attorneys' fees and costs. *Id*. at 6-7. In addition, Plaintiffs asked the Court to issue an order requiring that LML comply with the terms of the Master Agreement and Trust Agreements as to fringe benefit contributions and to submit to an audit "for the period from September 2011 to the last completed calendar quarter."[2] *Id*.

### B. Service and Entry of Default

After multiple failed attempts at personal service, the Complaint was served on LML's agent for service of process by mail via substituted service at its place of business, on September 23, 2013.

---

[2] The Complaint does not request that the Court also order LML to pay all amounts found due and owing as a result of the audit.

3

1  Docket Nos. 9-10; *see also* Plaintiffs' Supplemental Brief in Support of Motion for Default Judgment,

2  Ex. A (Affidavit of Diligence of Process Server).  LML failed to answer the Complaint.  The Clerk

3  entered default against LML on November 25, 2013.  Docket No. 13.  On January 31, 2014,

4  Plaintiffs filed the instant Motion seeking entry of default judgment.

### C. Motion

In the Motion, Plaintiffs ask the Court to enter default judgment against LML and to award: 1) $41,297.58 in unpaid contributions for July 2012 through April 2013; 2) $1,200 in liquidated damages and $12,904.15 in interest on unpaid contributions for the same period;[3] 3) $616.34 in liquidated damages and $3,323.77 in interest on payments that were made late for the months of April 2012 through August 2012; 4)  $3,816.25 in attorneys' fees and $1,308.28 in costs.  Motion at 1-2; Lauziere Decl. ¶¶ 15-16 & Exs. G, H;  *see also* Lauziere Supp. Decl. ¶ 4 & Exs. A-K.  In addition, Plaintiffs ask the Court to order that LML be required to submit to an audit and to pay any amounts found to be due and owing . Motion at 8-9; Proposed Order (Docket No. 21).  Finally, Plaintiffs request that the Court retain jurisdiction over this action to enforce the Court's award.  *Id*. at 9.

## III. ANALYSIS

### A. Entry of Default Judgment

Plaintiffs have applied for a default judgment in this action on the basis that Defendants

---

[3] There is a discrepancy between the Lauziere Declaration ¶ 15 and Ex. G, attached thereto, as to the period of time the interest and liquidated damages figures cover.  The Court concludes that the figures for interest and liquidated damages in ¶ 15 refer to the months listed in Ex. G, that is, September 2012 through April 2013, rather than the months stated in the declaration (July 2012 through April 2013).  Adding to the confusion, the amount listed in Lauziere Decl. ¶ 15 for unpaid contributions, that is $41,297.58, *does* include unpaid contributions for July and August of 2012, as can be seen in Exhibit G.  In the supplemental brief and declaration submitted by Plaintiffs following the Motion hearing, the same amounts for liquidated damages and interest are erroneously described as covering the months of July 2012 through April 2013.  *See* Lauziere Supp. Decl., ¶ 4.  In fact, using the breakdowns attached as exhibits to the supplemental declaration, which reflect the interest and liquidated damages amounts for the months of June 2012 through April 2013, the undersigned was able to verify that the amount sought in the Motion for interest and liquidated damages (purportedly) for the period July 2012 through April 2013 in fact include only the interest and liquidated damages that accrued in the months of September 2012 through April 2013.  Thus, although the two time periods described in Plaintiffs' papers suggest they may have double-counted the interest and liquidated damages for the months of July and August 2012, they did not, in fact, double-count for those months.

1  have failed to plead or otherwise defend or appear after valid service. Under Federal Rule of Civil
2  Procedure 55(b)(2), the court may enter a default judgment once the Clerk, under Rule 55(a), has
3  entered the party's default based upon a failure to plead or otherwise defend the action. Fed. R.
4  Civ. P. 55(b)(2). "A default judgment may be entered against an infant or incompetent person
5  only if represented by a general guardian, committee, conservator, or other like fiduciary who has
6  appeared." If the court is satisfied that jurisdiction is proper and that service of process upon the
7  defendant was adequate, courts are instructed to consider several facts in determining whether to
8  grant default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of
> plaintiff's substantive claim, (3) the sufficiency of the complaint,
> (4) the sum of money at stake in the action, (5) the possibility of a
> dispute concerning material facts, (6) whether the default was due
> to excusable neglect, and (7) the strong policy underlying the
> Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In making its decision, the court takes all factual allegations in the complaint, except those relating to damages, as true. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). Where a court finds that default should be granted, it may award damages if the plaintiff satisfies its burden of proving the damages through evidence. *See id*.

Here, the record supports the conclusion Defendant is not exempt from default judgment on the basis that it is not an infant, incompetent, soldier or sailor. LML is a corporation and therefore not an infant, incompetent person, soldier or sailor. *See*, *e.g.*, *F.T.C. v. J.K. Publications, Inc.*, 2000 WL 35594144, at *1 (C.D. Cal., Aug. 31, 2000) ("Defendants are not corporations and are therefore not infants or incompetent persons").

The Court further finds that Plaintiffs' claims are well-pleaded. Plaintiffs have offered evidence that LML signed a Memorandum Agreement, thereby binding itself to the Master Agreement and the Trust Agreements. Lauziere Decl. ¶¶ 7 - 14. These Agreements impose liability on delinquent employers for liquidated damages, unpaid interest and attorney's fees in addition to any unpaid contributions. *Id*. Plaintiffs' Complaint alleges that Defendant failed to

United States District Court
Northern District of California

make complete, timely contribution payments, and the majority of these contributions remain unpaid. Lauziere Decl. ¶ 13. Consequently, Plaintiffs state a claim under ERISA, 29 U.S.C. § 1145.[4] Further, the Court finds no evidence of excusable neglect that would justify denying Plaintiffs' request for default judgment. The Court concludes that liability is established as to Plaintiffs' ERISA claims and that default judgment should be entered against LML.

**B.     Remedy**

    **1.  Section 1132(g)**

Once liability is established through a defendant's default, a plaintiff is required to establish that the requested relief is appropriate. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)). Under ERISA, an employee benefit plan that obtains judgment in its favor in an action for unpaid contributions under 29 U.S.C. § 1145 is entitled to the following forms or relief:

    (A) the unpaid contributions,

    (B) interest on the unpaid contributions,

    (C) an amount equal to the greater of –

        (1) interest on the unpaid contributions, or

        (2) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),

    (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

    (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). This section further provides that "[f]or purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or,

---

[4] Section 1145 provides:
> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 145.

if none, the rate prescribed under section 6621 of Title 26. *Id.*

### 2. Contributions

Plaintiffs must submit proof of their damages. *TeleVideo*, 826 F.2d at 917-18; *Geddes*, 59 F.2d at 560. In the Motion, Plaintiffs seek unpaid contributions for the period July 2012 through April 2013 in the amount of $41,297.58. Lauziere Decl. ¶ 15 & Ex. G. In addition, Plaintiffs have provided detailed reports for each of the months in this period reflecting the underlying contributions owed for each month and the payments made by LML for those months. *See* Lauziere Supp. Decl., Exs A-K. The evidence provided by Plaintiffs supports the amount requested and should be awarded in full.

### 3. Liquidated Damages

Liquidated damages of up to 20 percent are permitted under 29 U.S .C. § 1132(g)(2) on contributions that are unpaid at the time an action is filed, even if the contribution is subsequently paid. *See Idaho Plumbers & Pipefitters Health and Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir. 1989). There is some disagreement among the courts of this district as to whether *Idaho Plumbers* also allows for the award of liquidated damages on late contributions that were paid *before* an action was filed so long as there were unpaid contributions for other months at the time the suit was initiated. *See Trustees of Bricklayers Local No. 3 Pension Trust v. Huddleston*, 2013 WL 2181532, at *5 (N.D.Cal., 2013) (discussing split of authority). The undersigned agrees with the conclusion of Judge Corley, in *Huddleston*, that the approach that is most consistent with the language of § 1132(g) and the reasoning of *Idaho Plumbers* is the one that has found that liquidated damages on contributions paid *before* the action is initiated are not available under ERISA. *See id.* Nonetheless, the court in *Idaho Plumbers* found that ERISA does not preempt the federal common law of liquidated damages where 29 U.S.C. § 1132(g)(2) does not apply. Further, this Court has found, under similar facts, that a provision providing for liquidated damages at a flat rate of $150 was enforceable as a matter of federal common law. *See Bd. of Trustees v. KMA Concrete Construction Co.*, 2011 WL 7446345, at * 4 (N.D. Cal. Dec. 20, 2011). For the reasons stated in *KMA*, the Court finds that the liquidated damages provision in the Master Agreement in this case is enforceable.

Having found that Plaintiffs may recover liquidated damages for all of the months listed in the Complaint – even for those where the contributions were paid before Plaintiffs filed this action – the Court must determine the amount of liquidated damages to which Plaintiffs are entitled. Plaintiffs seek a total of $1,816.34 in liquidated damages for late or unpaid contributions for the period of April 2012 through April 2013. Lauzier Decl. ¶¶ 15-16 & Exs. G, H; Lauziere Supp. Decl., ¶ 4-5, 7. This amount equals liquidated damages for thirteen months, at the rate specified in the Master Agreement, minus a partial payment on the liquidated damages that were due for April 2012. See Lauziere Decl. ¶ 16; Lauziere Supp. Decl., ¶ 7. Accordingly, this amount should be awarded in full.

### 4. Interest

In their Motion, Plaintiffs seek interest on the unpaid contributions in the amount of $16,227.92, calculated through December 25, 2013.[5] This amount consists of 1) $3,323.77 for late paid contributions for the months of June 2012 through August 2012; and 2) $12,904.15 for the period from September 2012 through April 2013. *See* Lauziere Decl. ¶¶ 15-16 & Exs. G, H; Lauziere Supp. Decl., ¶¶ 4-5.[6] Lauziere explains that no interest was charged for April and May of 2012 because the contributions for those months were paid less than a month after they became delinquent.

Under 29 U.S.C. § 1132(g), Plaintiffs are entitled to interest under ERISA for contributions that are unpaid at the time the action was filed, even if the contributions are later paid. *See Idaho Plumbers*, 875 F.2d at 215. In addition, interest on contributions that were paid at the time the action was filed but were paid late may be available as a matter of contract. *See Board of Trustees of Laborers Health and Welfare Trust Fund for Northern Cal. v. Shade Const. and Engineering*, 2007 WL 3071003, at *7 (N.D.Cal., Oct. 19, 2007) (citing *Idaho Plumbers*, 875 F.2d at 217). In

---

[5] At the Motion hearing, the undersigned told Plaintiffs that they could bring their interest payment up to date when they provided their supplemental materials. Plaintiffs declined to do so, using the same interest calculation that was offered in the Motion papers, terminating on December 25, 2013.

[6] As noted above, the evidence provided by Plaintiffs makes clear that the amount of $12,904.15 covers the months of September 2012 through April 2013 and not July 2012 through April 2013 as is stated in Plaintiffs' moving papers.

*Shade Construction*, the court found that a provision in the master agreement setting interest on late contributions at a rate of 1.5% per month was enforceable. For the reasons stated in that case, the undersigned reaches the same conclusion and therefore recommends that the Court award interest on all of the contributions that are at issue that were paid more than one month late. Further, the supplemental materials provided after the hearing provide sufficient evidence to establish that the amount requested by Plaintiffs is correct and should be awarded in full.

### 5. Attorneys' Fees

Plaintiffs are entitled to attorneys' fees under ERISA and the Trust Agreements. 29 U.S.C. § 1132(g)(2)(D); Lauziere Decl. ¶ 13, Ex. A (Trust Agreements), Art. IV, §3. Plaintiffs request $3,816.25 in attorneys' fees for a total of 15.25 hours of work. Motion at 2; Declaration of Daniel S. Brome in Support of Plaintiffs' Motion for Default Judgment ("Brome Decl.") ¶ 5. This amount includes the following fees: 1) $72.50 for work performed by Teresa Rojas Alou, Senior Paralegal (0.5 hours at a rate of $145.00 per hour); 2) $2,610.00 for work performed by Daniel S. Brome, Associate (9.0 hours at a rate of $290.00 per hour); 3) $36.25 for work performed by Judy Castillo, Senior Paralegal (0.25 hours at a rate of $145.00 per hour); 4) $517.50 for work performed by Barry E. Hinkle, Shareholder (1.5 hours at a rate of $345.00 per hour); and 5) $580.00 for work performed by Eleanor Natwick, Paralegal (4.0 hours at a rate of $145.00 per hour). *Id*.

The Court finds the requested rates and amounts to be reasonable. Plaintiffs provided detailed time sheets showing the time and tasks performed by each attorney and paralegal for which it seeks fees. Brome Decl. Ex. A. Plaintiffs have also described in a declaration the level of experience for each attorney and paralegal. *See* Brome Decl. ¶¶ 6 - 10. Courts in this district, in similar cases, have awarded the same hourly rates requested in this case for work performed by both attorneys (Brome and Hinkle), and for work performed by paralegals Natwick and Castillo. *See Bd. of Trustees v. C & L Coatings*, No. 12-1368 (MEJ), 2012 WL 7748318, at *10 (N.D. Cal. Dec. 18, 2012), *report and recommendation adopted*, 2013 WL 1087849 (N.D. Cal. March 13, 2013) (awarding $345 per hour to Mr. Barry Hinkle, $290 per hour to Mr. David Brome, and $145 per hour to paralegal Ms. Eleanor Natwick); *Bd. of Trustees v. KMA Concrete Const. Co.*, No. 10-

1   5831, 2011 WL 4031134 (N.D. Cal. Aug. 12, 2011), *report and recommendation adopted*, 2011
2   WL 4031100 (N.D. Cal. Sept. 8, 2011) (awarding $145 per hour to paralegals Ms. Eleanor
3   Natwick and Ms. Judy Castillo).  The Court also finds the hourly rate of $145 per hour that is
4   requested for the work of Ms. Alou to be reasonable as her experience is commensurate with that
5   of Ms. Castillo, whose work is billed at the same rate.  Accordingly, it is recommended that
6   Defendants be ordered to pay $3,816.25 in attorneys' fees as requested by Plaintiffs in this case.

### 6. Costs

In the Motion, Plaintiffs request costs in the amount of $1,308.28, which is broken down as follows: $104.25 for photocopies of the complaint and exhibits for filing; $400.00 for the filing fee in this case; $784.78 for the cost of personal service on the Defendants; and $ 19.25 for the messenger service of Summons to the Court.  *See* Brome Decl. Ex. B.  Under Civil Local Rule 54-3, an award of costs may include the clerk's filing fee and fees for service of process "to the extent reasonably required and actually incurred."  In addition, the Trust Agreements provide for the recovery of all expenses incurred in collection.  Therefore, it is recommended that all of the costs requested by Plaintiffs be awarded in full.

### 7. Audit

The Supreme Court has held that where a collective bargaining agreement gives the Trustees of an employee benefit plan the right to audit an employer's books and records, it will be enforced. *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 569 (1985).  Here, the Master Agreement expressly provides that a signatory employer shall submit to an audit of its records upon request.  Therefore, it is recommended that the Court issue an order compelling Defendant to submit to a full audit for the period of September 2011 through the last full quarter.  Further, with the exception of items 4 and 7, the terms of Plaintiffs' proposed injunction, found on pages 2 and 3 of Plaintiffs' proposed order (Docket No. 21), appear to be reasonable and should be adopted.

The Court does *not* recommend, however, that items 4 and 7 of Plaintiffs' proposed injunction be adopted.  *See*  Docket No. 21. Item 4 provides that "Defendant is ordered to pay all amounts found due and owing as a result of said audit of its books and records pursuant to the

Trust Agreements." Item 7 provides that "Defendant is ordered to pay interest on any amounts found due in an amount to be determined consistent with 26 U.S.C. 6621." Judges in this district have likened provisions such as this to a "blank check" and have declined to award such relief. *See, e.g., Bay Area Painters and Tapers v. Brown*, 2007 WL 1302982, at *3 (N.D.Cal., May 3, 2007) (Alsup, J.) (Finding that proposed injunction amounted to a "blank check" where Plaintiffs would "fill in the amount of that 'check' when they later determine the contributions due" and declining to award requested relief); *Board of Trustees in their capacities as Trustees of Laborers Health and Welfare Trust v. Geotech Const., Inc.*, 2008 WL 3496474, at *2 (N.D.Cal., July 18, 2008) (Zimmerman, J.) (same). As Judge Alsup noted in *Brown*, "Plaintiffs may demand that defendant comply with [the provisions of the collective bargaining agreement] once they determine the amount of damages owed. If defendant fails to comply at that time, plaintiffs may seek to enforce the determined amount at that time." 2007 WL 1302982, at *5.

## IV. CONCLUSION

For the reasons stated above, it is recommended that the Motion be GRANTED. The Court should award the following relief: 1) unpaid contributions in the amount of $41,297.58; 2) liquidated damages in the amount of $18,044.26; 3) interest in the amount of $16,227.92; 4) attorneys' fees in the amount of $3,816.25; and 5) costs in the amount of $1,308.28. In addition, it is recommended that Defendant be ordered to comply with the provisions set forth in Plaintiffs' proposed order, Docket No. 21, with respect to injunctive relief, except for items 4 and 7, and with the proviso that the audit should cover the period beginning no earlier than September 2011 through the last full quarter. Finally, it is recommended that the Court retain jurisdiction over this action.

Dated: April 16, 2014

JOSEPH C. SPERO
United States Magistrate Judge